IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG SEMICONDUCTOR, INC. and SAMSUNG ELECTRONICS AMERICA, INC., | ) | |
| Plaintiffs, | ) | C.A. No. 24-614 (JLH) |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| NETLIST, INC., | ) | |
| Defendant. | ) | |

**SAMSUNG ELECTRONICS CO., LTD, SAMSUNG SEMICONDUCTOR, INC. AND SAMSUNG ELECTRONICS AMERICA, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO NETLIST INC.'S COUNTERCLAIMS**

Plaintiffs and Counterclaim-Defendants Samsung Electronics Co., Ltd. ("SEC"), Samsung Semiconductor, Inc. ("SSI"), and Samsung Electronics America, Inc. ("SEA," and together with SEC and SSI, "Samsung") file this Answer and Affirmative Defenses to the Counterclaims filed by Defendant and Counterclaim-Plaintiff Netlist, Inc. ("Netlist") on June 2, 2025 (the "Counterclaims"). Except as hereinafter specifically admitted, qualified, or affirmatively alleged, Samsung denies each and every allegation, matter, or thing contained in the Counterclaims and states in response to each of the numbered paragraphs of the Counterclaims as follows:

## NATURE OF THE ACTION[1]

1. Samsung admits that the Counterclaims identify one patent: U.S. Patent No. 11,880,319 (the "'319 patent") as being involved in this action.

## THE PARTIES

2. To the extent the allegations of Paragraph 2 set forth legal conclusions, no response is required. Samsung admits that Netlist is a corporation organized and existing under the laws of the State of Delaware. Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2, and on that basis denies them.

3. SEC admits that it is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129, Samsung-ro, Yeongton-gu, Suwon-si, Gyeonggi-do, 443-742, Republic of Korea. SEC admits that it is a parent corporation of SSI. SEC admits that the Device Solutions division has involvement in certain semiconductor products. SEC admits that it is involved in the design, manufacture, and provision of certain products sold by certain SEC subsidiaries or affiliates. Samsung denies the remaining allegations Paragraph 3.

4. SSI admits that SSI is a corporation organized and existing under the laws of the State of California. Samsung denies the remaining allegations of Paragraph 4.

5. SEA admits that SEA is a corporation organized and existing under the laws of the State of New York. Samsung denies the remaining allegations of Paragraph 5.

---

[1] Samsung repeats the headings set forth in Netlist's Counterclaims to simplify comparison between Netlist's Counterclaims and this response. In doing so, Samsung makes no admissions regarding the substance of the headings or other allegations of Netlist's counterclaims. Unless otherwise stated, to the extent a particular heading can be construed as an allegation, Samsung specifically denies all such allegations.

6. The allegations of Paragraph 6 set forth legal conclusions, and no response is required. Samsung denies the remaining allegations of Paragraph 6.

## JURISDICTION AND VENUE

7. The allegations of Paragraph 7 set forth legal conclusions, and no response is required. Samsung admits that this Court has subject matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1338 to the extent Netlist asserts a claim for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq*. Samsung denies all allegations of patent infringement and further denies that Netlist is entitled to any relief for its allegations of patent infringement whether by award of damages, injunction, or otherwise. Samsung denies any remaining allegations of Paragraph 7.

8. The allegations of Paragraph 8 set forth legal conclusions, and no response is required. Samsung admits that this Court has personal jurisdiction over SEC, SSI, and SEA in this particular action. Samsung admits that it filed the instant lawsuit for declaratory judgment of non-infringement and breach of contract in this Court. Samsung denies that it performed or continues to perform acts of infringement in this District. Samsung denies any remaining allegations of Paragraph 8.

9. The allegations of Paragraph 9 set forth legal conclusions, and no response is required. Samsung admits that it filed the instant lawsuit for declaratory judgment of non-infringement and breach of contract in this Court. SEC admits that it is a foreign entity incorporated under the laws of the Republic of Korea. Samsung denies all allegations of patent infringement, and further denies that Netlist is entitled to any relief for its allegations of patent infringement whether by award of damages, injunction, or otherwise. Samsung denies any remaining allegations of Paragraph 9.

## BACKGROUND

10. Samsung lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10, and on that basis denies them.

11. To the extent the allegations of Paragraph 11 set forth legal conclusions, no response is required. Samsung admits that the disclosure of the ’319 patent relates generally to memory modules. Samsung denies that the remaining allegations of Paragraph 11.

12. To the extent the allegations of Paragraph 12 set forth legal conclusions, no response is required. Samsung admits that memory modules are used in server computers and that the JEDEC Solid State Technology Association (“JEDEC”) is a standardization body that develops open standards and publications for a broad range of semiconductor technologies, including memory modules. Samsung denies that the remaining allegations of Paragraph 12.

13. To the extent the allegations of Paragraph 13 set forth legal conclusions, no response is required. Samsung admits that dual in-line memory modules (“DIMMs”) are a type of memory module. Samsung admits that registered dual in-line memory modules (“RDIMMs”) are a type of memory module. Samsung admits that load-reduced dual in-line memory modules (“LRDIMMs”) are a type of memory module. Samsung denies that the remaining allegations of Paragraph 13.

14. Samsung lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14, and on that basis denies them.

15. Samsung lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15, and on that basis denies them.

16. Samsung lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16, and on that basis denies them.

17. Samsung lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17, and on that basis denies them.

**The Asserted ’319 Patent**

18. To the extent the allegations of Paragraph 18 set forth legal conclusions, no response is required. Samsung admits that the ’319 patent states, on its face, that it is titled “Memory Module Having Open-Drain Output for Error Reporting and Initialization” and that it lists Hyun Lee as the inventor. Samsung further admits that the ’319 patent states, on its face, that it issued as a patent on January 23, 2024, from Application No. 17/840,593, filed June 14, 2022. Samsung denies that the ’319 patent validly issued. Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 18, and on that basis denies them.

19. To the extent the allegations of Paragraph 19 set forth legal conclusions, no response is required. Samsung admits that the ’319 patent states, on its face, that Netlist is the assignee. Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19, and on that basis denies them.

**Samsung’s Activities**

20. Samsung admits that certain Samsung entities manufacture semiconductor memory products such as DRAM, NAND Flash, and MCP (Multi-Chip Package). Samsung admits that certain Samsung entities make memory components and memory modules designed for, among other things, use in servers such as those supporting cloud-based computing and other applications. Samsung denies the remaining allegations of Paragraph 20.

21. Samsung denies the allegations of Paragraph 21.

22. Samsung admits that Samsung lists certain products on its website. Samsung lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22, and on that basis denies them.

23. To the extent the allegations of Paragraph 23 set forth legal conclusions, no response is required. Samsung admits that on November 12, 2015, Netlist and SEC entered into a Joint Development and License Agreement (the "Agreement"). Samsung admits that in the Agreement, Netlist granted SEC and its subsidiaries, including SSI and SEA, a perpetual, paid-up, worldwide, non-exclusive license to all patents owned or controlled by Netlist or any of its subsidiaries having an effective first filing date on or prior to November 12, 2020, and the license extends through the expiration of the last to expire of the licensed patents. Samsung denies the remaining allegations of Paragraph 23.

24. To the extent the allegations of Paragraph 24 set forth legal conclusions, no response is required. Samsung admits that a July 15, 2020 letter from Netlist to SEC purports to terminate the Agreement. Samsung admits that a May 27, 2020 letter from Netlist to SEC alleges that Samsung materially breached the Agreement by "repeatedly fail[ing] to fulfill Netlist's request for NAND and DRAM products throughout the term of the Agreement" and by improperly deducting withholding taxes. Samsung admits that on May 28, 2020, the U.S. District Court for the Central District of California docketed Netlist's breach of contract complaint against SEC. *Netlist Inc. v. Samsung Elecs. Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.) ("Breach Action"). Samsung denies the remaining allegations of Paragraph 24.

25. To the extent the allegations of Paragraph 25 set forth legal conclusions, no response is required. Samsung admits that on October 14, 2021, the court in the Breach Action issued a confidential order granting summary judgment in favor of Netlist on Netlist's Third Claim

for Relief, which seeks a declaration that Netlist terminated Samsung's license effective July 20, 2020, *see* Breach Action, D.I. 186, and also granted summary judgment in Netlist's favor that Samsung was liable for certain alleged breaches of other provisions in the Agreement, *see id.* Samsung admits that on February 15, 2022, the court in the Breach Action entered judgment in favor of Netlist on its three contract claims. Breach Action, D.I. 306. Samsung admits that the Central District held a new trial to (a) resolve an ambiguity in the supply provision in Section 6.2 of the Agreement, and (b) determine whether any breach of that provision by Samsung was material such that Netlist could terminate the agreement. Samsung admits that, on May 17, 2024, the jury returned its verdict, adopting Netlist's proffered meaning of the disputed provision and finding that Samsung's breach of that provision was material. *See id.*, D.I. 556. Samsung admits that, in post-trial briefing, Samsung requested a new trial. Samsung admits that the district court granted Samsung's motion on account of implied juror bias. *Id.*, D.I. 640 at 16. Samsung admits that, on March 24, 2025, the district court held a new trial, and the jury again adopted Netlist's proffered meaning of the disputed provision. *See id.*, D.I. 769. Samsung admits that Samsung is challenging the jury verdict in post-trial motions. Samsung admits that certain Samsung entities continue to make and sell DDR4 RDIMMs, DDR4 LRDIMMs, and DDR5 RDIMMs. Samsung denies the remaining allegations of Paragraph 25.

## CLAIMS FOR RELIEF

### Count I

### (Alleged Infringement of the '319 Patent)

26. Samsung incorporates by reference its responses to Paragraphs 1–25 of Netlist's Counterclaims as if specifically set forth herein. The allegations of Netlist's Affirmative Defenses do not require an answer. Except as expressly admitted, Samsung denies each and every allegation of Paragraph 26.

27. Samsung denies the allegations of Paragraph 27.

28. To the extent the allegations of Paragraph 28 set forth legal conclusions, no response is required. Samsung denies the allegations of Paragraph 28.

29. To the extent the allegations of Paragraph 29 set forth legal conclusions, no response is required. Samsung denies the allegations of Paragraph 29.

30. To the extent the allegations of Paragraph 30 set forth legal conclusions, no response is required. Samsung denies the allegations of Paragraph 30.

31. To the extent the allegations of Paragraph 31 set forth legal conclusions, no response is required. Samsung denies the allegations of Paragraph 31.

32. To the extent the allegations of Paragraph 32 set forth legal conclusions, no response is required. Samsung denies the allegations of Paragraph 32.

33. Samsung denies the allegations of Paragraph 33.

34. Samsung denies the allegations of Paragraph 34.

35. Samsung denies the allegations of Paragraph 35.

36. Samsung admits that it has been aware of the ’319 patent’s existence since it issued. Samsung denies the remaining allegations of Paragraph 36.

## NETLIST’S DEMAND FOR TRIAL BY JURY

37. To the extent a response is required, Samsung admits that Netlist’s Counterclaims contain a demand for a trial by jury on all issue triable to a jury.

## NETLIST’S PRAYER FOR RELIEF

38. Samsung denies that Netlist is entitled to any of the relief against Samsung requested in its Prayer for Relief or any other relief.

## GENERAL DENIAL

To the extent any of Netlist's Counterclaims have not been previously specifically admitted or denied, Samsung denies them.

## SAMSUNG'S ADDITIONAL DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Samsung, without waiver, limitation, or prejudice, hereby asserts the additional defenses listed below. Samsung reserves the right to amend this Answer to add additional defenses, including defenses currently unknown to Samsung as they become known throughout the course of discovery in this action. Assertion of a defense is not a concession that Samsung has the burden of proving the matter asserted.

## FIRST ADDITIONAL DEFENSE
**(Failure to State a Claim)**

Netlist's Counterclaims fail to state a claim upon which relief can be granted.

## SECOND ADDITIONAL DEFENSE
**(Non-Infringement)**

Samsung does not infringe and has not infringed, under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement), any valid, and enforceable claim of the '319 patent, either literally or under the doctrine of equivalents, and has not committed any acts in violation of 35 U.S.C. § 271.

Samsung incorporates by reference Paragraphs 108–17 of its Complaint as if specifically set forth herein. Samsung is also not liable for products not made, used, sold, or offered for sale in, or imported into, the United States.

## THIRD ADDITIONAL DEFENSE
**(Laches, Estoppel, Unclean Hands, Acquiescence, and/or Waiver)**

Netlist's attempted enforcement of the '319 patent against Samsung is barred by laches, estoppel, unclean hands, acquiescence, and/or waiver. For example, to the extent the '319

patent is essential to one or more JEDEC standards, Netlist is estopped from enforcing the ’319 patent against Samsung because of its failure to comply with its RAND obligations. As another example, to the extent the ’319 patent is essential to one or more JEDEC standards, Netlist is estopped from seeking an injunction or lost profits by its RAND obligations. Samsung incorporates by reference Paragraphs 115–22 of its Complaint as if specifically set forth herein.

The ’319 patent was filed on June 14, 2022, and issued on January 23, 2024. The ’319 patent is a continuation (by way of other intervening applications) of U.S. Patent No. 8,489,837 (the "’837 patent"), the application for which was filed on June 14, 2010, and which issued on July 16, 2013.

Netlist first joined JEDEC in 2001 and has been a participating member of JEDEC in various capacities since that time. Notably, Netlist has been a participating member of the JC-40, JC-42, and JC-45 committees for the majority of its time as a JEDEC member. As a JEDEC committee member, Netlist has a duty to disclose "Potentially Essential Patents," which the JEDEC Patent Policy defines as those patents "reasonably believed by a subject person to contain one or more Essential Patent Claims."

JEDEC commenced work on the DDR4 standards in the 2011–2012 timeframe. Mr. Hyun Lee, a named inventor on the ’837 patent, attended numerous JEDEC meetings during the development of the DDR4 standards. For example, Mr. Lee attended meetings of JEDEC committees JC-40 (Digital Logic), JC-42 (Solid State Memories), and/or JC-45 (DRAM) in at least December 2011, March 2012, June 2012, September 2013, March 2014, September 2014, December 2014, and March 2015. By virtue of Mr. Lee's attendance at those meetings, active involvement in JEDEC and otherwise, on information and belief, Netlist and Mr. Lee were aware of the draft and final specifications for DDR4 LRDIMMs being considered and voted upon by

those committees, including JESD82-32, dated November 2016, as well as prior drafts of it. For example, Intel presented and discussed Committee Item Number 158.01 ("DDR4 LRDIMM Proposal") at the December 8, 2011 meeting of JC-40, Committee Item Number 0311.14 ("Proposed DDR4 DB Training Modes") at the March 25, 2012 meeting of JC-40, and Committee Item Number 0311.12 ("Proposed DDR DB Buffer Control Words") at the June 4, 2012 meeting of JC-40. On information and belief, Mr. Lee attended these meetings.

On information and belief, Mr. Lee and Netlist attended these meetings to gain information about the proposed standards to obtain patents to cover these standards and the contributions made by other JEDEC members that Netlist failed to name as inventors of the '319 patent. On information and belief, Netlist is asserting the '319 patent in bad faith, as it knows, or should have known, that the '319 patent is invalid. Netlist's bad faith assertion of the '319 patent is further evidenced by the PTAB's invalidation of claims in related patents that are materially the same as those asserted here. *See SK Hynix Inc. v. Netlist, Inc.*, IPR2018-00303, Paper 42 (FWD) (Mar. 21, 2019) (holding unpatentable all challenged claims of related U.S. Patent No. 9,535,623); *Samsung Elecs., Co., Ltd. v. Netlist, Inc.*, IPR2022-00062, Paper 54 (FWD) (May 8, 2023) (holding unpatentable all challenged claims of related U.S. Patent No. 9,858,218); *Samsung Elecs., Co., Ltd. v. Netlist, Inc.*, IPR2022-00064, Paper 54 (FWD) (May 9, 2023) (holding unpatentable all challenged claims of related U.S. Patent No. 10,474,595). All of these claims have since been canceled by IPR certificates.

Additionally, despite attending JEDEC meetings for years and tracking the technology that would be included in the DDR4 standards, Netlist opportunistically delayed its disclosure of the '837 patent to JEDEC. Netlist submitted a Letter of Assurance for the '837 patent on April 7, 2016, related to JEDEC committee JC-40 and DDR4 LRDIMM components. Under

the JEDEC Patent Policy, the commitments in the '837 Letter of Assurance extend to the '319 patent. *See, e.g.*, JEDEC Manual No. 21T § 8.2.1. Netlist submitted the '837 Letter of Assurance just seven months before the publication of JEDEC Standard JESD82-32 in November 2016. The content of JEDEC Standard JESD82-32, however, was finalized well before the publication date. Thus, Netlist could have—and, indeed, should have—disclosed the '837 patent earlier.

On information and belief, Netlist's delay in disclosing the '837 patent to JEDEC was intentional—Netlist wanted to ensure that when it ultimately disclosed to JEDEC the '837 patent and its alleged relevance to the DDR4 LRDIMM standards, JEDEC and its members would be unable to pivot to alternative technology. Netlist's failure to timely disclose patents allowed Netlist to benefit inequitably from that misconduct.

Netlist's delay in disclosing the '837 patent has materially prejudiced Samsung and other JEDEC members because, for example, JEDEC worked on the DDR4 standards without considering the numerous technology alternatives that would have avoided Netlist's patents (based on Netlist's apparent interpretation of the claims, with which Samsung disagrees). In addition, members of the industry, including Samsung, invested in and sold DDR4 LRDIMM-compliant devices well *before* Netlist disclosed the '837 patent. Samsung began selling DDR4 LRDIMMs in 2013 and produced DDR4 LRDIMMs in substantial volumes beginning in 2014. Netlist's egregious misconduct justifies holding the '319 patent unenforceable.

Additionally, to the extent the '319 patent is essential to one or more JEDEC standards, Netlist is obligated to license the '319 patent on RAND terms to implementers of certain DDR4 and DDR5 standards, as evidenced by Netlist's submission of a Letter of Assurance for the '837 patent. Samsung incorporates by reference Paragraphs 99–102 and 113–20 of its Complaint as if specifically set forth herein.

**<u>FOURTH ADDITIONAL DEFENSE</u>**
**(Invalidity)**

Each asserted claim of the ’319 patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including, without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 115, 116, and/or judicially created doctrines including but not limited to obviousness-type double patenting or the Rules and Regulations of the USPTO relating thereto. Specifically, all of the Asserted Claims are invalid under 35 U.S.C. § 102 and/or § 103 in view of at least any reference listed on the face of the patents, any reference cited or referred to in the prosecution histories of the patents at issue, foreign counterparts to those patents, and related U.S. and foreign patents, and/or the prior art that will be asserted.

The obviousness of the Asserted Claims is confirmed by the *inter partes* review (“IPR”) proceedings. On May 15, 2025, the PTAB instituted an IPR in *Samsung Elecs. Co., Ltd. v. Netlist, Inc.*, IPR2025-00002 (“’319 IPR”), which found that the grounds raised in the petition “show[] a reasonable likelihood that claims 1–20 of the ’319 patent are unpatentable as obvious.” ’319 IPR, Paper 17 at 61–62. Additionally, the PTAB found claims to be unpatentable in related patents that are materially the same as those asserted here. *See SK Hynix Inc. v. Netlist, Inc.*, IPR2018-00303, Paper 42 (FWD) (Mar. 21, 2019) (holding unpatentable all challenged claims of related U.S. Patent No. 9,535,623); *Samsung Elecs., Co., Ltd. v. Netlist, Inc.*, IPR2022-00062, Paper 54 (FWD) (May 8, 2023) (holding unpatentable all challenged claims of related U.S. Patent No. 9,858,218); *Samsung Elecs., Co., Ltd. v. Netlist, Inc.*, IPR2022-00064, Paper 54 (FWD) (May 9, 2023) (holding unpatentable all challenged claims of related U.S. Patent No. 10,474,595). All of these claims have since been canceled by IPR certificates.

The ’319 patent is further invalid under 35 U.S.C. § 102(f) for failing to name the correct inventor. Samsung incorporates by reference its Third Additional Defense as if specifically set forth herein.

**FIFTH ADDITIONAL DEFENSE**
**(Prosecution History Estoppel)**

One or more claims are limited by the text of the ’319 patent and prosecution histories of the ’319 patent and related patents such that Netlist is estopped, or otherwise precluded, from asserting that the claim is infringed by Samsung, literally or by equivalents.

**SIXTH ADDITIONAL DEFENSE**
**(Lack of Standing)**

Netlist’s Counterclaims fail to the extent Netlist does not have standing to assert the ’319 patent against Samsung.

**SEVENTH ADDITIONAL DEFENSE**
**(Marking)**

Any claim for damages by Netlist is limited by its failure to mark, including without limitation, to the extent Netlist contends there are products covered by the ’319 patent, Netlist’s failure to mark its own products with the number of the ’319 patent and/or its failure to require and/or police the marking of Netlist’s customers and licensees.

**EIGHTH ADDITIONAL DEFENSE**
**(Notice, Damages, and Costs)**

Netlist’s claim for damages is statutorily limited under 35 U.S.C. §§ 268 and 287. Netlist is barred from recovering costs in connection with this action under 35 U.S.C. § 288. Netlist’s claims for relief are limited by the doctrines of full compensation, exhaustion, and/or first sale, and Netlist is not entitled to double recovery for substantially similar claims or claims in patents related to the ’319 patent or other related patents. To the extent the ’319 patent is essential

to one or more JEDEC standards, Netlist is barred from seeking lost profits by its RAND obligations.

**NINTH ADDITIONAL DEFENSE**
**(License (Express or Implied) and/or Patent Exhaustion)**

Netlist's counterclaim for infringement of the '319 patent is barred in whole or in part by express or implied license and/or patent exhaustion.

For example, on November 12, 2015, Netlist and SEC entered into a Joint Development and License Agreement (the "Agreement"). The Agreement contains cross-license, joint development, and product supply provisions.

In the Agreement, Netlist granted SEC and its subsidiaries, including SSI and SEA, a perpetual, paid-up, worldwide, non-exclusive license to all patents owned or controlled by Netlist or any of its subsidiaries having an effective first filing date on or prior to November 12, 2020. The license extends through the expiration of the last to expire of the licensed patents.

SEC similarly granted Netlist and its subsidiaries a perpetual, paid-up, worldwide, non-exclusive license to all patents owned or controlled by SEC or any of its subsidiaries having an effective first filing date on or prior to November 12, 2020.

The Agreement required SEC to make a payment to Netlist of $8 million subject to the terms and conditions therein. SEC made this payment to Netlist except for a portion that was remitted as tax withholding to the Korean tax authorities, which later refunded the withheld portion to Netlist.

Netlist is now taking extraordinary actions to back out of its grant of a patent license to Samsung.

On May 27, 2020, Netlist's Chief Licensing Officer, Marc J. Frechette, wrote to Mr. Seung Min Sung of SEC, and alleged that Samsung materially breached the Agreement by

"repeatedly fail[ing] to fulfill Netlist's request for NAND and DRAM products throughout the term of the Agreement" and, allegedly, by improperly deducting withholding taxes. Netlist did not allege, and has never alleged, that Samsung breached the Agreement in any way related to the patent cross-license. In the same letter—which was the first time Netlist raised its breach allegations—Mr. Frechette informed Mr. Sung that Netlist had filed a complaint in U.S. District Court for the Central District of California with respect to the alleged breach by Samsung and provided a copy of the complaint for reference.

On May 28, 2020, the U.S. District Court for the Central District of California docketed Netlist's breach of contract complaint against SEC. *Netlist Inc. v. Samsung Elecs. Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.) ("Breach Action").

Netlist subsequently wrote to SEC to terminate the Agreement, including the patent license to SEC and its subsidiaries. On July 15, 2020, Netlist's Chief Licensing Officer, Marc J. Frechette, wrote to Mr. Seung Min Sung of SEC and stated that "Netlist is hereby terminating, effective immediately, the Agreement including the patent license granted to Samsung."

One week later, on July 22, 2020, Netlist amended its complaint in the Breach Action, seeking a declaration that the license it granted Samsung, but not the license Samsung granted Netlist, is terminated. In the Breach Action, Netlist seeks monetary damages and a declaration "that Netlist has terminated the Agreement pursuant to Section 13.2 and that Samsung's licenses and rights under the agreement have ceased."

Netlist then issued a "Notice of Infringement" to Samsung and a demand that Samsung take a second license to Netlist's patents.

Specifically, on October 15, 2020, Netlist's outside counsel in the Breach Action wrote to SEC's outside counsel in the Breach Action and to the General Counsel of SSI, copying

Netlist's Chief Licensing Officer, Marc J. Frechette, providing notice of Samsung's alleged infringement of Netlist's portfolio of patents. Netlist stated that because it had terminated the Agreement, "Samsung is no longer licensed to any of Netlist's portfolio of patents." Netlist further asserted that its patents relate to Load Reduced Dual In-Line Memory Modules ("LRDIMMs") and/or Registered Dual In-Line Memory Modules ("RDIMMs"). Netlist then alleged: "Despite the termination of the Joint Development and License Agreement, Samsung continues to unlawfully utilize Netlist's innovations and to infringe Netlist's patents, including United States Patent Nos. 10,217,523, 10,474,595, and 9,858,218." Netlist concluded the letter by demanding that "Samsung and its subsidiaries honor third-party intellectual property rights" and engage in "formal licensing discussions." Netlist further stated that it "reserves all rights and remedies" with respect to the alleged infringement.

Netlist resumed its communications with Samsung in 2021. On February 2, 2021, Netlist's Chief Licensing Counsel, Mr. Marc J. Frechette, indicated by email that Samsung must take a second license, coupled with the demand that Netlist "be made whole" for any alleged breach asserted in the Breach Action.

Accordingly, Netlist seeks to double-dip, with a demand that Samsung take a second license to Netlist's patents.

On October 14, 2021, the court in the Breach Action issued a confidential order granting summary judgment in favor of Netlist on Netlist's Third Claim for Relief, which seeks a declaration that Netlist terminated Samsung's license effective July 20, 2020. *See Netlist Inc. v. Samsung Elecs. Co., Ltd.*, No. 8:20-cv-00993-MCS, D.I. 186 (C.D. Cal.). The court also granted summary judgment in Netlist's favor that Samsung was liable for certain alleged breaches of other provisions in the Agreement. *See id.*

Beginning on December 1, 2021, the court in the Breach Action held a jury trial on damages for one of the alleged breaches (the alleged failure to fulfill Netlist's orders for NAND and DRAM products). On December 3, 2021, the jury returned a verdict in Samsung's favor, finding that Netlist failed to prove that it suffered any damages for this alleged breach. *See* Breach Action, D.I. 276.

On January 10, 2022, Samsung filed a motion for entry of judgment in Samsung's favor as to Netlist's First and Second Claims for Relief and, as to Netlist's Third Claim for Relief, for entry of judgment in Samsung's favor or, in the alternative, a trial on the claim. On February 15, 2022, the court in the Breach Action entered judgment in favor of Netlist on the First and Second Claims for Relief and awarded nominal damages in the amount of $1.00 for each claim. *See* Breach Action, D.I. 306. Further, the court entered judgment in favor of Netlist on the Third Claim for declaratory relief finding that Netlist terminated the Agreement and that Samsung's licenses and rights under the Agreement have ceased. *See id.*

On February 25, 2022, SEC appealed the judgment entered in the Breach Action to the Ninth Circuit. *See* Breach Action, D.I. 309. SEC maintained that it did not breach the Agreement, that the Agreement has not been terminated, and that it continues to hold a paid-up, worldwide, non-exclusive license to Netlist's patents, including the Netlist Patents-in-Suit. Further, regardless of whether the Agreement was properly terminated (which Samsung disputes), Samsung, its customers, and its end users are not liable for infringement of the Netlist Patents-in-Suit for any memory modules made, used, sold, offered for sale, or imported before July 20, 2020, the date of which the purported termination became effective.

The Ninth Circuit agreed that patent cross-licensing was a distinct aim of the Agreement, independent of the joint development project: "[T]he JDLA has two stated purposes

(1) developing a new NVDIMM-P product (i.e., the [joint development project]), and (2) patent cross-licensing. The title and preamble of the agreement exclusively reference these two topics, and each substantive section corresponds entirely to one of the two goals." Breach Action, D.I. 192 at 3–4. The Ninth Circuit remanded the case to (a) resolve an ambiguity in the supply provision in Section 6.2 of the Agreement, and (b) determine whether any breach of that provision by Samsung was material such that Netlist could terminate the agreement. Following the Ninth Circuit's remand, a jury trial was held. On May 17, 2024, the jury returned its verdict, adopting Netlist's proffered meaning of the disputed provision and finding that Samsung's breach of that provision was material. *See id.*, D.I. 556.

In post-trial briefing, Samsung requested a new trial. The district court granted Samsung's motion on account of implied juror bias. *Id.*, D.I. 640 at 16.

On March 24, 2025, the district court held a new trial, and the jury again adopted Netlist's proffered meaning of the disputed provision. *See id.*, D.I. 769. Samsung is challenging the jury verdict in post-trial motions. If those challenges are unsuccessful, Samsung intends to appeal the verdict and judgment to the United States Court of Appeals for the Ninth Circuit.

Samsung's liability for infringement is also limited because, even if the Agreement had been properly terminated, Samsung cannot be liable for any alleged infringement for the period during which the Agreement was in effect or for any alleged infringement that was released pursuant to Section 7.1 of the Agreement.

**TENTH ADDITIONAL DEFENSE**
**(Not an Exceptional Case)**

Netlist is not entitled to a finding that this case is exceptional warranting attorneys' fees under 35 U.S.C. § 285, or pursuant to the Court's inherent power.

**ELEVENTH ADDITIONAL DEFENSE**
**(No Willful Infringement)**

Netlist's claim for enhanced damages, if any, and an award of fees and costs against Samsung have no basis in fact or law and should be denied. Netlist has failed to plead facts that plausibly allege the necessary elements to support these claims. Samsung has not willfully infringed the '319 patent. Netlist bears the burden of establishing the entitlement to enhanced damages and a finding of willfulness. *See Halo Elecs., Inc. v. Pulse Elecs.*, 579 U.S. 93, 107–08 (2016). Enhanced damages under 35 U.S.C. § 284 are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," and should "not be meted out in a typical infringement case." *Id*. at 103–04. Netlist has not identified evidence of any egregious, deliberate, or wanton conduct by Samsung required to prove willful infringement.

**TWELFTH ADDITIONAL DEFENSE**
**(Prosecution Laches)**

Netlist's attempted enforcement of the '319 patent against Samsung is barred by prosecution laches.

**RESERVATION OF ADDITIONAL DEFENSES**

Samsung reserves the right to assert additional defenses that may surface through discovery in this action.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Brian Nester
Peter Swanson
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

Alice J. Ahn
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-6000

June 25, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 25, 2025, upon the following in the manner indicated:

Karen E. Keller, Esquire
Emily S. DiBenedetto, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Jason Sheasby, Esquire
Andrew J. Strabone, Esquire
Isabella Chestney, Esquire
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)